IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ELIZABETH ANDREADAKIS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. |
| ROBERT WILKIE, SECRETARY ) | |
| DEPARTMENT OF VETERANS AFFAIRS, ) | |
| ) | |
| Defendant. ) | |

# *COMPLAINT*

## *Introduction*

1. This is a complaint for damages, declaratory and injunctive relief authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e et seq. ("Title VII"), and pursuant to the Age Discrimination in Employment and Act of 1967 ("ADEA"), as amended 29 U.S.C., 633a et seq.

2. This lawsuit is brought to prevent Defendant, ROBERT WILKIE, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, pursuant to Title VII and the ADEA, from maintaining a policy, practice, custom or usage of discriminating against, Plaintiff, ELIZABETH ANDREADAKIS, in regard to terms, conditions and privileges of employment, and for damages, and other equitable relief for Plaintiff, ELIZABETH ANDREADAKIS, who has been discriminated against by Defendant on the basis of age, race, sex/gender (female); and reprisal (prior EEO Activity).

## *Jury Demand*

3. A jury is hereby demanded.

*Jurisdiction and Venue*

4.  This action is brought for a declaratory judgment, injunctive relief and compensatory damages, pursuant to 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1688, 28 U.S.C. Sections 2201 and 2202. This Court has jurisdiction to hear the Plaintiff's claims pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) 1337 and 42 U.S.C. 2000e-5(f) [Section 706(f)(s) and (3) and 704(a) of Title VII].

5.  Venue is proper in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. Section 1391(b) as El Paso County, Texas is the county where the Defendant operates the ROBERT WILKIE, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, Plaintiff's employer. Further, all actions complained of herein occurred within the El Paso County, Texas.

*Parties*

6.  **ELIZABETH ANDREADAKIS** is a Hispanic-female over the age of 40, citizen of the United States and a resident of the City of El Paso, El Paso County, Texas.

7.  Plaintiff is employed by the Defendant, ROBERT WILKIE, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS. The Defendant maintains and administers records relevant to its employment practices. Service of process may be made upon the United States Attorney for the Western District of Texas, and the United States Attorney General, Department of veterans affairs, by registered or certified mail, pursuant to the Federal Rules of Civil Procedure (Rules 4(I)(1)(A), (B) & (C)).

8.  Defendant is an employer within the meaning of 42 U.S.C. 2000e, et seq., ("Title VII") and ADEA.

*Exhaustion of Remedies*

9.  Plaintiff filed a formal complaint of discrimination. Such filing was within at least 45 days

of the last act of which he complained. Plaintiff's formal complaint alleged denial of Plaintiff's rights, by Defendant, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., as amended by the Civil Rights Act of 1991 and the ADEA. Specifically, ELIZABETH ANDREADAKIS alleges that he was discriminated against because of her national origin (Hispanic), sex (female) and subject to retaliation (prior EEO Activity).

10. All conditions precedent to the filing of the lawsuit has been met.

*Factual Allegations*

11. Plaintiff was unlawful discriminated due to her age, sex, and national origin (race) when her repeated request for a salary increase or to be "reboarded" (to be able to receive a higher salary) were denied, when ongoing since July 2007.

12. Plaintiff is a Hispanic, female, and was born in January 1968 and was 41 years of old in 2009 and was originally employed by Defendant's El Paso VA Health Care System ("EPVAHCS") from 2004 to 2007.

13. On March 29, 2009, Plaintiff was appointed to the position of Nurse Practitioner at EPVAHCS. Boarding determined appointment at Nurse III, Step 3, due to the fact that the plain, "uncoached" resume, supported nine (9) dimensions of nursing practice. When she applied, Plaintiff had been trained that school resumes should be short and to the point.

14. Plaintiff was not provided the checklist of Nursing dimension the Veteran's Affair Nursing Board used as a reference to determine applicant's appointment, step level and salary. When Chuck Vickrey became a Nursing Board member, he provided applicants a copy of the Nursing Standard check list to applicants to ensure their resume reflected the aspects of the Nursing dimensions for more points and higher step increase and therefore higher salary. This practice was also followed by Nurse recruiter, Laura Sarmiento.

15.     The application package Plaintiff received was plain, simple, short and without details. It certainly did not include her licensure, education, and experience.  The way it was instructed to submit in the University. However, the Veteran's Affair had and has a different standard which Plaintiff was not aware.

16.     Plaintiff's application was initially reviewed in El Paso by El Paso Veteran's Affair Nursing Standard Board, but it is unclear to whom and why it was decided to send the application to Little Rock, Arkansas. Historically, this board rated their applicants very low.

17.     The Boarding should have taken place at El Paso Veteran's Affair as originally started by El Paso Veteran's Affair nursing board, however, Ms. Alicia (Lisa) Williams, EPVAHC's Human Resource Office, interfered and Plaintiff was referred to Little Rock, Arkansas' Veteran's Affair.

18.     Plaintiff's starting salary as a Nurse III, Step 3 was $84,390.00.  However, this is based on a limited resume, and due to the out of town boarding by a Defendant with a historic record of boarding Nurse Practitioner's lower than most. Plaintiff should have been boarded in El Paso, Texas. In the meantime, younger, less experienced nurses were boarded in El Paso at higher salaries (Veronica Guardado and Crista Payan, that year).  It appears Plaintiff was boarded by a local EPVAHCS PSB, but the local PSB was not for pay-setting purposes.

19.     While Plaintiff did receive incentive pay as well as pay increases during her tenure with the Defendant, so did new Nurse Practitioners with less experience and no tenure, who were being hired at 10,000.00 to $15,000.00 more than Plaintiff was making. Ms. Lenore Enzel, Nurse Executive, agreed that Plaintiff's salary was lower than most. Ms. Enzel recommended to Plaintiff to apply for a retention bonus every year to make up the difference in salary. However, Ms. Enzel also advised against applying for scholarship to cover expenses for Doctorate program

since it would be more beneficial to get retention bonuses yearly. Three (3) other Nurse Practitioners received scholarships for almost $18,000.00 for completion of Doctorate Nurse Practitioner program, including, Darlene Bedwell (Non-Hispanic), Charles Vickrey (male, Non-Hispanic), and Crista Payan (younger, female).

20. Alicia "Lisa" Williams in the Human Resources Officer at EPVAHCS. Ms. Williams was aware of Plaintiff's race and approximate age since Plaintiff treated Ms. Williams' son as a patient in a private clinic (while in the company of Ms. Williams) during the period Plaintiff was absent from the Veteran's Affair (Sep 2007 to March 2009).

21. Along with several other authority figures at El Paso Veteran's Affair, Ms. Williams is one of the Defendant representatives who turned a deaf ear to privileged treatment to younger Nurse Practitioners, male Nurse Practitioners, and non-Hispanic Nurse Practitioners. Ms. Alicia Williams, lowered Plaintiff's salary at hire due to the fact that Plaintiff utilized a Professional Standards Board member as a reference. Ms. Williams was the "deciding official" as to Plaintiff's starting salary.

22. Plaintiff's salary was lowered by Ms. Alicia Williams, at hire due to the fact that Plaintiff utilized a Professional Standards Board member as a reference. Ms. Williams was the "deciding official" as to Plaintiff's starting salary and that a coworker Donald Harrison informed Plaintiff that Ms. Williams had lowered Plaintiff's salary.

23. There were three (3) individuals who were receiving a higher salary with less experience that Plaintiff, to wit; Darlene Bedwell (Caucasian), Charles Vickrey (male, Caucasian), and Crista Payan (younger, female). This new nurse practitioners were hired at $105,000 and soon received a raised at $115,000 to $119,000, when the Plaintiff with much more experience received a starting salary of $91,000 followed with a raised from step increase to $103,000. Thus, Plaintiff was receiving a salary of approximately $13,000 less than individuals outside her protected class.

24. Once hired, various management officials, including Dr. Tomas Aguilar, Chief Medical Service) and Ms. Enzel, ignored or failed to act on Plaintiff's requests for salary increases. Human Resources has the power to accept or reject the board's recommendations. The Defendant never states if Dr. Harrison was interviewed. He may or may not remember exactly the suggested salary presented to Human Resources but according to Dr. Harrison it was lowered, and that amount was offered to Plaintiff. The request was never for "salary increase" but for fair re-boarding

25. The Defendant has not clarified if Dr. Harrison and/or if the other Board members at that time had been interviewed.  It is unclear how the Defendant verified or denied Dr. Harrison's involvement, or the involvement of other members who may still work there.  The Defendant has not denied the fact that Mr. Williams has the authority to accept or deny the Board NPSB authority salary recommendations.   It has been demonstrated to Plaintiff that Human Resources do have that authority.

26. The Defendant has failed to clarify why the boarding initiated at the Veteran's Affairs El Paso sector, but then sent Plaintiff to an out of district Veteran's Affairs office, while Mr. Payan and/or Ms.  Guardado, younger males, and other non-Hispanic male NP boarded in El Paso.

27. Plaintiff's application was sent to an outside office, were these boards are rating Nurse Practitioner's low.  Newer Nurse Practitioners were not boarded out of town faired higher than Plaintiff.  Plaintiff was not coached to re-do her resume according to Veteran's Affair standards like other new Nurse Practitioners were. The fact that younger nurse practitioners were hired at higher salaries and lately offered "new unadvertised" positions at the Veteran's Affair of El Paso is a fact that cannot be denied. This is blatant age discrimination.  It is fact that Dr. Aguilar agrees that there were other younger NP's hired at higher salaries.

28. The fact that younger nurse practitioners were hired at higher salaries and lately offered "new unadvertised" positions at the Veteran's Affair of El Paso is a fact that cannot be denied. For example, Crystal Payan and Veronica Guardado, are two such nurses younger that Complaint.

29. The Defendant's may have strict compliance with its own regulatory guidance, however, the discrepancy of Nurse Practitioner with a 10-year tenure being offered more salary, opposed to an Nurse Practitioner with a 20-year tenure. If this is the Defendant's own regulatory guidance of strict compliance, then the system is set up for age discrimination. Ms. Andreadakis is a victim of such discriminatory system that rewards younger Nurse Practitioners with much higher salaries and penalizes the older more experienced Nurse Practitioners.

## COUNT I.
## TITLE VII VIOLATION - SEX (GENDER)

30. The Plaintiff realleges paragraphs 1 – 29 as if fully set forth herein.

31. Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on sex in violation of Title VII of the Civil Rights Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of sex (female). As a direct and proximate result of these actions, Plaintiff suffered sex discrimination.

32. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorneys fees pursuant to Title VII and under the general equity Powers of the Court.

## COUNT II.
## TITLE VII VIOLATION – RACE/NATIONAL ORIGIN (HISPANIC)

33. The Plaintiff re alleges paragraphs 1 -32 as if fully set forth herein.

34. Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on Race/national origin in violation of Title VII of the Civil Rights

Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of Race/National Origin (Hispanic). As a direct and proximate result of these actions, Plaintiff suffered Race/National Origin (Hispanic) discrimination.

35. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorneys' fees pursuant to Title VII and under the general equity Powers of the Court.

### COUNT III.
### AGE DISCRIMINATION

36. Plaintiff realleges paragraphs 1 - 35 as if fully set forth herein.

37. The actions of Defendant constituted age discrimination against Plaintiff in the creation and condemnation of an age bias which changed the terms and conditions of her employment.

38. The unlawful employment practices in violation of the ADEA herein complained of, occurred in the course of Plaintiff's employment with Defendant, and were carried on by Defendant's agents, servants, and employees and committed because of Plaintiff's age.

39. Defendants discriminated against Plaintiff herein because of her age with respect to the terms, conditions, privileges, advantages and benefits of her employment with Defendant. Specifically, Plaintiff was held to stricter standards of performance, and denied benefits of employment accorded other employees.

40. In addition, Plaintiff was treated dissimilarly from other employees.

41. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings heretofore and is therefore entitled to attorney's fees pursuant to the ADEA and under the General Equity Powers of the Court.

WHEREFORE, Plaintiff respectfully requests:

a.     A declaratory judgment, declaring Defendant's acts, through the acts of its agents, employees and successors, herein complained of to be in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the ADEA.

b.     Compensatory damages against the Defendant for each violation of Plaintiff's rights, as protected by Title VII and/or the ADEA, for her pain, suffering, emotional distress, humiliation and for any resulting physical and emotional damages, in the amount of $300,000.00;

c.     Attorney's fees, court costs, prejudgment and post judgment interest as provided by law including Title VII and the ADEA; and

d.     Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

*The Law Office of Enrique Lopez*
701 N. St. Vrain Street
El Paso, Texas 79902
Telephone: (915) 351-0595
Facsimile: (915) 534-7207

By: /s/ Enrqiue Lopez
    ENRIQUE LOPEZ
    State Bar No.: 12563530

Attorney for Plaintiff